UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MASSERAY SIBY,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

CASE NO. 2:26-cv-00993-GJL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

Petitioner Masseray Siby, a native and citizen of Mauritania, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 15. Presently before the Court is Petitioner's Amended Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and injunctive relief concerning the manner by which he may be re-detained and the Government's ability remove him to a country other than Mauritania (*i.e.* "third-country removal").[1] Dkt. 15.

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 4.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Amended Petition (Dkt. 15) **IN PART** and **ORDERS** Petitioner's immediate release and permanent injunctive relief as set forth in the conclusion below.

## I.    FACTUAL BACKGROUND

Petitioner Masseray Siby, a citizen of Mauritania, entered the United States without lawful status approximately twenty-two (22) years ago. Dkt. 15 ¶ 24; Dkt. 23 ¶¶ 4–5. After applying for asylum before U.S. Citizenship and Immigration Services ("USCIS"), Petitioner's case was referred to an immigration court in April 2005. Dkt. 15 ¶ 25. On April 20, 2005, Petitioner was issued a Form I-862, Notice to Appear ("NTA"), charging him as inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). Dkt. 23 ¶ 6. On September 26, 2006, an immigration judge ("IJ") denied asylum and other relief, and ordered Petitioner removed. *Id*. ¶ 7. After the Board of Immigration Appeals ("BIA") denied Petitioner's appeal, his order of removal became final in October 2008. Dkt. 15 ¶¶ 26–27; Dkt. 23 ¶¶ 8–11. Petitioner was then released from ICE custody on an Order of Supervision ("OSUP") in December 2010. Dkt. 23 ¶ 12.

On June 16, 2025, approximately seventeen (17) years after receipt of a final order of removal and fifteen (15) years after his release, Petitioner was re-detained at a required annual check-in with immigration officials. Dkt. 15 ¶¶ 26, 28; Dkt. 23 ¶ 13. Prior to and since his re-detention, Petitioner has cooperated in efforts to obtain a travel document from Mauritania, including multiple visits to the Mauritania Embassy. *See* Dkt. 15 ¶¶ 27; 29–30; Dkt. 27 at 1–2. To date, no such travel document has been issued. *See* Dkt. 27. Petitioner remains detained at NWIPC. Dkt. 15.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 2

## II.    PROCEDURAL BACKGROUND

These federal habeas proceedings were initiated on March 24, 2026, when Petitioner filed his initial habeas Petition. Dkt. 1. The following day, Petitioner filed an emergency Motion for a temporary restraining order ("TRO") to enjoin his transfer out of the Western District of Washington and removal from the United States while his habeas Petition is pending. Dkt. 6. The Court granted the Motion by Order dated March 26, 2026 (*see* Dkt. 11), but because Petitioner had already been placed on a plane to Florence, Arizona, Respondents filed a Motion to amend the Court's Order for purposes of Petitioner's return to this District (*see* Dkt. 18). On March 31, 2026, the Court granted Respondents' Motion and Petitioner was returned to this District. *See* Dkts. 19, 20.

Petitioner has now filed an Amended Petition. Dkt. 15. As relief, Petitioner requests, among other things, immediate release from confinement and an injunction placing limitations on all future re-detention decisions and conditions of release. *Id*. at 30–32. Respondents filed their Return on April 27, 2026, arguing the Amended Petition and all requests for relief therein should be denied. Dkt. 22.

In support of their Return, Respondents filed a Declaration of Deportation Officer Robert Andron, with no evidentiary attachments. Dkt. 23. On May 4, 2026, Petitioner filed a Traverse in support of his Amended Petition, along with a Declaration of Petitioner describing the unsuccessful efforts, including his own, to effectuate his removal to Mauritania. Dkts. 24–25. On June 2, 2026, the Court directed further briefing on the current steps to effectuate Petitioner's removal to Mauritania. Dkt. 26.

Respondents filed a Supplemental Response on June 12, 2026, along with a Supplemental Declaration from Officer Andron. Dkts. 27, 28. They further notified the Court that they intended

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 3

to transfer Petitioner to Washington, D.C., within 72 hours of June 11, 2026, for the limited purpose of facilitating an in-person interview with the Mauritania Consulate for the issuance of a travel document. Dkt. 29. After such interview, Petitioner was to be returned to NWIPC. *Id*. Petitioner filed a Reply on June 15, 2026, as well as an affidavit from Petitioner's counsel, indicating that as of June 15, 2026, Petitioner has not been transferred to Washington, D.C., for the interview. Dkt. 30.

Upon review of the parties' submissions and governing law, the Court **GRANTS** the Amended Petition **IN PART** and **ORDERS** Petitioner's immediate release as outlined in the conclusion below.

### III.    DISCUSSION

In the Amended Petition, Petitioner asserts eleven Grounds for relief. For purposes of discussion and based on the relief granted herein, the Court sets forth those Grounds as follows. In Grounds One and Two, Petitioner contends his removal is not likely to occur in the reasonably foreseeable future, making his detention of indefinite duration in violation of due process as set forth in *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Dkt. 15 at 18–20. In Grounds Five and Six, Petitioner asserts his re-detention and continued detention violates procedural and substantive due process for various reasons. *Id*. at 22–25. In Grounds Seven through Nine, Petitioner asserts his re-detention and continued detention violate the Administrative Procedure Act ("APA"). *Id*. at 25–29. In Ground Ten, Petitioner asserts ICE has no statutory right to authorize his detention. *Id*. at 29. In Ground Eleven, Petitioner alleges that, under the *Accardi* doctrine, Respondents violated agency regulations in revoking Petitioner's OSUP. *Id*. at 29–30. In Ground Three, Petitioner asserts his third-country removal, if conducted without notice and an opportunity to be heard, violates federal immigration statutes including the INA and the

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 4

Convention Against Torture ("CAT"), the APA, and the Due Process Clause. *Id.* at 20–21. Finally, in Ground Four, Petitioner asserts his removal to an undesignated third country where he is likely to be imprisoned or harmed ("punitive third-country removal") would violate constitutional guarantees against unlawful punishment. *Id*. at 21–22.

Respondents argue the Petition should be denied on all Grounds. Dkt. 22. In particular, Respondents argue Grounds One and Two should be denied because ICE previously has taken steps toward effectuating Petitioner's removal to Mauritania, but judicial intervention prevented them from doing so. Dkt. 22 at 4–6. Implicit in this argument is Respondents' further contention that there remains a significant likelihood of Petitioner's removal to Mauritania in the reasonably foreseeable future. *Id*. With respect to Petitioner's Grounds relating to his OSUP revocation, Respondents argue that any defect in Petitioner's OSUP revocation and re-detention would not entitle him to release because, at the time of his re-detention, the legal and factual predicate for the OSUP no longer existed by virtue of Petitioner's imminent removal. *Id*. at 8–9. As to Grounds Seven through Nine, Respondents insist these claims must be dismissed for lack of subject matter jurisdiction. *Id*. at 9. Respondents also contend Ground Ten is meritless. *Id*. at 9–10. And finally, in response to Grounds Three and Four, Respondents argue that any claim for relief related to third-country removal is unripe and that Petitioner's contentions regarding punitive third-country removal are without merit. *Id.* at 6–8.

As discussed in greater detail below, the Court finds that Petitioner's detention pending removal is of indefinite duration as alleged in Grounds One and Two and will grant federal habeas relief on that basis. Because the appropriate remedy for Grounds One and Two is immediate release, the Court declines to reach Petitioner's re-detention claims in Grounds Five through Eleven and **DENIES** any corresponding request to enjoin his future re-detention.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 5

With respect to Petitioner's third-country removal claims in Grounds Three and Four, the Court concludes that Petitioner is entitled to an injunction requiring notice and the right to respond in reopened removal proceedings before he may be removed to a country other than Mauritania. Finally, the Court further concludes that Petitioner is also entitled to injunctive relief prohibiting his removal to an undesignated third country where he is likely to be imprisoned or harmed.

**A.      Indefinite Detention (Grounds One and Two)**

In Grounds One and Two, Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an IJ.

The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the INA mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the [DHS Secretary] **shall** detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas*, the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." 533 U.S. at 699. By interpreting the

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 6

INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id*.

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id*.

Within this framework, the noncitizen carries the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up). If the noncitizen provides good reason, the burden then shifts to the government to show removal remains likely within a reasonable timeframe. *Id*. If the government fails to submit sufficient rebuttal evidence showing that removal is likely to occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus relief. *Id.*

Here, a final order of removal was issued against Petitioner in 2008, and there is no dispute that Petitioner's detention has now extended beyond the presumptively reasonable period. *See* Dkt. 22 at 5 (acknowledging Petitioner's detention had extended beyond six months at the time of the Court's March 2026 Order on the Motion for TRO). Thus, the Court analyzes Petitioner's indefinite detention claim under *Zadvydas*'s burden-shifting framework wherein Petitioner bears the initial burden of providing good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.

1.    <u>Petitioner Provides Good Reason to Question the Likelihood of His Removal in the Reasonably Foreseeable Future</u>

Petitioner contends there is good reason to believe his removal will not occur within a reasonable timeframe because, despite having a final order of removal since 2008 and being detained since June 2025, there is no indication a travel document from Mauritania is forthcoming. The Court agrees. *See, e.g.*, *Sow v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1816, 2026 WL 733680, at *2 (W.D. Mich. Mar. 16, 2026) (finding good reason to believe removal was not foreseeable where petitioner shows government efforts at working with Mauritania for a travel document failed to progress and the proposed plan was merely to repeat an attempt at the removal previously rejected); *Haidari v. Bondi*, No. 2:26-cv-00237-JHC, 2026 WL 395683, at *2 (W.D. Wash. Feb. 12, 2026) (finding good reason to believe removal was not foreseeable and granting habeas relief where, after nine months in immigration detention, the country designated for removal had neither agreed to accept the petitioner nor issued travel documents).

Accordingly, the burden shifts to Respondents to rebut Petitioner's showing with evidence.

2.    <u>Respondents Fail to Show Petitioner's Removal is Likely to Occur in the Reasonably Foreseeable Future</u>

Respondents have not met their burden of rebutting Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. In fact, the evidence Respondents offer undermines their position. First, the initial Andron Declaration, unsupported with any documentation, demonstrates Respondents' only past *intentions* to remove Petitioner to Mauritania. Dkt. 23. Petitioner was issued a "Form I-269 Certificate of Identity" in March 2026,

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 8

but this is a document prepared by ICE and not a travel document issued by Mauritania.[2] *Id.* ¶¶ 20. To rely on that Andron Declaration now would require the Court to speculate that the removal conditions present in March 2026 remain unaffected by the passage of time.[3] The Declaration does not establish a significant likelihood of removal either imminently or in the foreseeable future. *See e.g.*, *Jaranow v. Bondi*, 819 F. Supp. 3d 1229, 1237–38 (W.D. Wash. Jan. 6, 2026) (finding Respondents' intentions insufficient to show a significant likelihood of removal in the foreseeable future); *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1198–99 (W.D. Wash. Dec. 4, 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.") (collecting cases).

Further, in the Supplemental Response filed on June 12, 2026, Respondents concede they are now in need of a travel document from Mauritania for Petitioner. Dkt. 27 at 1. They also claim that Mauritanian Embassy officials in Washington, D.C., confirmed they would conduct an

_____

[2] Respondents claim, without supporting documentation, that Petitioner "would be accepted into Mauritania with a Form I-269 Certificate of Identity." Dkt. 23 ¶ 20. In the Supplemental Declaration, however, Officer Andron admits the Form I-269 is not a travel document issued by Mauritania. Dkt. 28 ¶7. Neither a previous I-269 Form nor a present one, as well as any evidentiary confirmation that such a form would suffice for Petitioner's *entry to* Mauritania (rather than simply for his *removal from* the United States), have been provided by Respondents.

[3] Respondents argue repeatedly that, but for the Court's Order granting Petitioner's Motion for a TRO, Petitioner would have already been removed to Mauritania in March 2026. *See* Dkt. 22 at 5; Dkt. 27 at 1. In a Declaration submitted in support of the Amended Petition, under penalty of perjury, Petitioner casts doubt on this claim:

> In late March of this year, after being transferred from NWIPC to Arizona and then to Texas, I was put on a bus with about 300 other people. I did not know where we were being taken until we arrived at the airport. When we got there, the ICE officers were calling out country names, followed by names of people on the bus who were being sent to each country. The people whose names were called all got off the bus. I was one of eight people on the bus who weren't called. The countries called included Mauritania, Senegal, Gambia, Nigeria, Angola, and Sierra Leone. There may have been others but I don't recall. One of the other people who was left on the bus with me became very upset and was begging to be sent back to Senegal because he doesn't want to stay in the USA anymore. An officer responded that only the people who got off the bus were able to depart the USA because they had the right documents to leave, but that he and the other people left on the bus did not have the right documents and that is why we could not be deported at that time.

Dkt. 25 ¶ 8.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 9

in-person interview of Petitioner for a travel document, but according to Petitioner, the time for conducting such an interview has passed without his temporary transfer. *Id*. at 2; Dkt. 31 ¶ 2. Finally, Respondents assert they "cannot provide a definitive removal date at this time because issuance of a travel document remains within the control of the Mauritanian Government." Dkt. 27 at 3.

Although they claim to be actively engaged in securing the necessary documentation for Petitioner's removal, Respondents do not provide any evidence in these habeas proceedings that would inspire this Court's confidence that the current situation will change. Under these circumstances, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a good reason to believe Petitioner will not be removed in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Accordingly, Petitioner's continued detention under 8 U.S.C. § 1231(a)(6), as construed in *Zadvydas*, is no longer authorized and is unlawful. Petitioner's Amended Petition is **GRANTED** on these grounds.

**B.    Re-Detention Claims (Grounds Five and Six); APA Claims (Grounds Seven through Nine); Ultra Vires Claim (Ground Ten); *Accardi* Claim (Ground Eleven)**

In Grounds Five and Six, Petitioner alleges his re-detention and continued detention violate procedural and substantive due process. Dkt. 15 at 22–25. In Grounds Seven through Nine, Petitioner alleges his re-detention and continued detention violate Sections 706(2)(A), (B), and (C) of the APA. Dkt. 15 at 25–29. In Ground Ten, Petitioner asserts ICE has no statutory right to authorize his detention. *Id*. at 29. In Ground Eleven, Petitioner alleges that, under the *Accardi* doctrine, Respondents violated agency regulations in revoking Petitioner's OSUP. *Id*. at 29–30. Because the injuries alleged in these Grounds are remedied by the Court's grant of immediate release on Grounds One and Two and because disposition of these additional

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 10

constitutional and statutory claims would not materially alter the outcome of this case, the Court declines to reach Petitioner's re-detention claims in Grounds Five through Eleven. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (explaining that courts should avoid resolving a constitutional question "unless absolutely necessary to a decision of the case") (internal citations and quotations omitted).

**C.    Third-Country Removal (Grounds Three and Four)**

In his remaining Grounds for relief, Petitioner invokes the Court's habeas and federal question jurisdiction to request injunctive relief concerning third-country removal. Dkt. 15 at 20–22. As these Grounds are not remedied by his immediate release from detention and the requested injunctive relief is within this Court's jurisdiction to grant, the Court addresses each Ground in turn. *See generally Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas corpus relief is "at its core, an equitable remedy"); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus.").

Specifically, in Grounds Three and Four, Petitioner requests that Respondents be enjoined from removing Petitioner to a third country without notice and a meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings (Ground Three) and also from removing Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival (Ground Four). Dkt. 15 at 20–22.

1.    <u>Third-Country Removal (Ground Three)</u>

With respect to Ground Three, the Court finds Petitioner is entitled to injunctive relief enjoining Respondents from removing Petitioner to a third country without notice and a meaningful opportunity to respond.

"A number of courts in this district have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process." *Machuca*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 11

*Del Cid v. Mullin*, No. C26-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026) (citing *Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025), and *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025), and *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025)). Given the speed at which third-country removal can be executed once the decision to pursue such removal under this policy is made, these courts also find requests for injunctive relief ripe for adjudication even without evidence of the Government's active efforts to pursue third-county removal of the noncitizen. *Id.*; *see also Le v. Bondi*, No. 25-cv-2454-KKE, 2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026) (noting that, under the current policy, a noncitizen "could be put on a plane without being told where he is going and would never have the chance to express a reasonable fear of persecution or torture or seek judicial intervention").

Thus, where, as here, the Government does not dispute a noncitizen is subject to the current third-country removal policy (*see* Dkt. 22 at 6), an order enjoining execution of that policy is appropriate. *Savinsky v. Bondi*, No. 2:26-CV-00835-TL, 2026 WL 1191017, at *11 (W.D. Wash. May 1, 2026) (granting relief and rejecting the Government's argument that "[t]here is no indication at this time that ICE is seeking to remove Petitioner to a third country."); *see also Kumar v. Wamsley*, No. 25-cv-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025) ("Where alleged harm 'is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future.'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007)); *but see Edin v. Blanche*, No. C26-1208-MLP, 2026 WL 1256141, at *6 (W.D. Wash. May 7, 2026) (denying request for injunctive relief as unripe absent individualized evidence suggesting petitioner's third-country removal is imminent).

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 12

Accordingly, should Respondents take steps to remove Petitioner to a country other than Mauritania, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *See, e.g., Nguyen v. Scott,* 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025) (requiring that noncitizen be granted opportunity to challenge third-country removal in reopened removal proceedings).

### 2.    Punitive Third-Country Removal (Ground Four)

With respect to Ground Four, the Court finds Petitioner is entitled to injunctive relief enjoining Respondents from removing him to a third country where he is likely to face imprisonment or other punishment upon arrival.

Petitioner alleges his removal to a third country where he is likely to be imprisoned or harmed constitutes unlawful punishment in violation of the United States Constitution. Dkt. 15 ¶ 78 (citing *Wong Wing v. United States*, 163 U.S. 228, 237 (1896)). Courts in this District have recently granted relief on similar claims, holding that such punitive enforcement of the Government's third-country removal policy is unconstitutional under *Wong Wing*. *See Nguyen v. Hermosillo*, No. 2:26-CV-00335-GJL, 2026 WL 538497, at *8 (W.D. Wash. Feb. 26, 2026); *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1201–05 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. 25-cv-1889RSL, 2025 WL 3204369, at *7–8 (W.D. Wash. Nov. 17, 2025); *Nguyen*, 796 F. Supp. 3d at 732–35; *c.f. Somsanuk v. Bondi*, No. 26-CV-48-MLP, 2026 WL 221139, at *6 (W.D. Wash. Jan. 28, 2026) (denying injunction categorically prohibiting removal to "*any* third country," concluding such a claim was overbroad (emphasis added)).

In finding the risk of punitive enforcement to be nonspeculative, courts have taken judicial notice of "statements made by government officials, both on social media and to the press, acknowledging that deportees to third countries are being imprisoned and expressing

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 13

intent to continue that practice." *Baltodano*, 815 F. Supp. 3d at 1202 (quoting *Nguyen*, 796 F. Supp. 3d at 733–34). The court in *Nguyen* also noted that "[o]ther courts across the country have recognized that the [G]overnment is intentionally removing individuals to countries where they will be imprisoned." *Nguyen*, 796 F. Supp. 3d at 734 (citations omitted).

The courts in *Baltodano* and *Abubaka*, relying heavily on the *Nguyen* reasoning, concluded that Respondents' "practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under *Wong Wing* and *Zadvydas*." *Baltodano*, 815 F. Supp. 3d at 1203 (cleaned up); *Abubaka*, 2025 WL 3204369, at *8.

In line with this District's authority, this Court similarly concludes that Respondents' documented practice of third-country removals paired with imprisonment violates due process. Petitioner is therefore entitled to the requested order that Respondents not remove him to a third country where he is likely to face imprisonment or other punishment upon arrival.

### IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** the Amended Petition for writ of habeas corpus (Dkt. 15) and **GRANTS IN PART** Petitioner's request for a permanent injunction. The Court **ORDERS** as follows:

(1)    Respondents **SHALL** immediately release Petitioner Masseray Siby from custody on reasonable conditions of supervision, if any;

(2)    Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release;

(3)    Respondents **SHALL** return to Petitioner, immediately upon his release, any personal property, including but not limited to, personal identification documents (other than a passport) and employment authorization documents;

(4)    Respondents **SHALL NOT** remove Petitioner to a country other than the country designated in his Order of Removal without first providing him

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 14

with written notice and a meaningful opportunity to respond in a reopened removal proceeding before an immigration judge; and

(5)    Respondents **SHALL NOT** remove Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival.

Finally, the Court will entertain any timely post-judgment request for attorney's fees. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 22nd day of July, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 15